**UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF PENNSYLANIA**

| | |
|---|---|
| In re<br>   Fawwaz F. Beyha<br>       Debtor | Case No. 11-18010<br><br>Hon. Jean K. FitzSimon |

_____

## CONESTOGA TITLE INSURANCE COMPANY'S BRIEF CONTRA DEBTOR'S MOTION TO REOPEN CASE

### I. FACTS:

Conestoga Title Insurance Company ("Conestoga") is a Pennsylvania corporation conducting business as a title insurance underwriter with offices at 137-139 East King St., Lancaster, PA 17602.  According to the Debtor, on or about April 24, 1997, the Debtor purchased the property at 1900 S. 19th St., Philadelphia PA (the "Property").  On or about August 12, 1997, the Debtor obtained a mortgage loan from Valley Pine Mortgage, Inc. in the amount of $33,600.00 and at the same time executed a mortgage to secure the aforesaid loan, which mortgage was recorded on October 6, 1997 with the Philadelphia Department of Records in book JTD 0777 at page 474, et seq., and became a first lien against the Property (the "Valley Pine Mortgage").  The Valley Pine Mortgage was thereafter assigned to American General Finance pursuant to a Transfer and Assignment of Mortgage dated September 29, 1997 and recorded on October 14, 1998 in the Philadelphia Department of Records in Book A 0297 at page 369, et seq.

Pursuant to a merger between American General Finance and Springleaf Financial Services, Inc., ("Springleaf"), Springleaf became the holder of the Valley Pine loan and Mortgage which at that time had a principal balance of $35,000.00 (the "Springleaf

Mortgage Loan"). The aforesaid mortgage shall hereinafter be referred to as the "Springleaf Mortgage".

On or about October 31, 2006, the Debtor obtained a mortgage loan from Delta Funding Corporation ("Delta") in the amount of $135,450.00 (the "Delta Mortgage Loan") and at the same time executed a mortgage to secure the aforesaid loan, which mortgage became a second mortgage against the Property (the "Delta Mortgage"). At the time of the Delta Mortgage Loan transaction, the title searcher providing services in connection with the lender's title insurance policy apparently missed the prior Springleaf Mortgage lien and the lender's title insurance policy issued by Conestoga insured Delta in a first lien position against the Property.

On or about October 16, 2011, the Debtor filed a petition under Chapter 13 of the United States Bankruptcy Code, as a Chapter 13 reorganization case. On or about May 23, 2012, the Debtor's bankruptcy case was converted to a Chapter 11 case. On information belief, as a result of multiple assignments of the Delta Mortgage Loan, Ocwen Loan Servicing, LLC ("Ocwen") became the holder of the note and mortgage relating to the Delta Mortgage Loan. Although the Debtor claimed in its eighth bankruptcy plan of reorganization at paragraph 1.43 that Ocwen bought out the interest of Springleaf, this is a false and untrue statement in that Ocwen never paid any monies to Springleaf and never "bought out the interest of Springleaf". As a result of the Debtor going into default in connection with one or more of its mortgage loans, Ocwen realized for the first time that it was not in a first lien position against the Property because of the prior Springleaf Mortgage.

In order to address the lien priority issue, Conestoga paid Springleaf $42,102.93 in consideration for Springleaf assigning the Springleaf Mortgage Loan, including the note and mortgage given in that transaction, to Conestoga. Thereafter, Conestoga executed and recorded a subordination agreement which resulted in the Delta Mortgage Loan (and specifically the Delta Mortgage), which at that time was held by Ocwen, being in a first lien position ahead of the Springleaf Mortgage Loan (and specifically the Springleaf Mortgage). At no time did Conestoga or any other entity satisfy the Springleaf Mortgage.

Both the assignment of the Springleaf Mortgage Loan to Conestoga and the

subordination of the Springleaf Mortgage were recorded and the recorded assignment of the Springleaf Mortgage and the recorded subordination of the Springleaf Mortgage contained Conestoga's name and mailing address. The Springleaf Mortgage remains a valid and enforceable lien against the Property.

On January 18, 2012, prior to the conversion of the Debtor's bankruptcy from a Chapter 13 to a Chapter 11, the Debtor filed an adversary action (case number 12-00044) in order to determine the validity, priority and/or extent of the liens held by Springleaf and Ocwen. At or about the time that the Debtor converted his bankruptcy from a Chapter 13 to a Chapter 11, the Debtor withdrew the aforesaid adversary action. Despite the fact that both the recorded assignment and the recorded subordination agreement disclosed the existence and contact information for Conestoga as part of a public record, the Debtor failed and/or refused to send any notices in the bankruptcy case to Conestoga. As a result of the foregoing, when the Debtor's Eighth Modified Plan was allegedly filed and mailed out to creditors, no notice or copy of the said plan was provided to Conestoga. When the court order approving the Debtor's Disclosure Statement and setting the date for the Confirmation Hearing was allegedly mailed out to creditors, no notice or copy of the said order was mailed or delivered to Conestoga. If Conestoga had received any notice or order seeking to confirm a bankruptcy plan which provided for the discharge of the lien it held in connection with the Springleaf Mortgage, Conestoga certainly would have objected.

The Springleaf Mortgage Loan was never paid by the Debtor, in whole or in part. On or about January 18, 2012, the Debtor filed a Complaint and adversary action at No. 12-00044 seeking to determine the validity, priority and/or extent of Springleaf's lien or other interest in the Debtor's Property. On information belief, the aforesaid adversary action was thereafter withdrawn by the Debtor. On or about February 25, 2012, Springleaf filed a motion for relief from stay which was granted by the Court on March 21, 2012. Following a motion for reconsideration filed by the Debtor, the Court entered an order on May 2, 2012 denying the Debtor's Motion for Reconsideration and ordering that Springleaf was free to proceed with its mortgage foreclosure action with respect to the property located at 1900 S. 19th St., Philadelphia PA 19145, on or after May 16, 2012. Based upon the foregoing, the Debtor was certainly well aware of the existence and enforceability of the Springleaf Mortgage, given the considerable litigation involving this issue. It is

noteworthy that all of this occurred prior to the Debtor preparing a plan of reorganization. The Debtor was well aware of the fact that Springleaf had an enforceable mortgage and lien completely distinct from any loan or mortgage obtained through Ocwen or any predecessor to Ocwen. Furthermore, because it was the Debtor who obtained the second mortgage through Ocwen (or Ocwen's predecessor), the Debtor knew or certainly should have known if any of his debts were paid off as a result of obtaining the Ocwen mortgage loan. If over $30,000 of proceeds from the Ocwen loan had been used to pay off the Springleaf loan, the Debtor certainly would have known that.

After the Debtor converted his bankruptcy from a Chapter 13 to a Chapter 11, the Debtor proceeded to file serial, unsatisfactory proposed bankruptcy plans of reorganization. At times various creditors would object to these insufficient plans and other times the bankruptcy Trustee would object. On or about August 6, 2014, the Debtor filed his eighth amended Chapter 11 Plan (the "Plan"). That Plan falsely and erroneously stated at section 1.43 that the Springleaf Mortgage had been sold to Ocwen and according to the Debtor, Springleaf therefore "holds no claim against Debtor". At no time did the Debtor obtain an order from the Court striking, avoiding, impairing or otherwise disposing of the lien of the Springleaf Mortgage.

On or about October 21, 2014, the United States Trustee filed an objection to confirmation of the Debtor's eighth amended plan of reorganization. On the same date, the United States Trustee filed a Motion to Convert the Debtor's case to a Chapter 7 case or in the alternative to dismiss the Debtor's bankruptcy case. On or about October 26, 2016, the Debtor's bankruptcy case was terminated, with no discharge of debts.

On or about June 8, 2018, almost two years after the Debtor's bankruptcy case had been terminated, the Debtor filed a motion to reopen his Chapter 11 bankruptcy case. At no time did Conestoga ever receive any notice from the Debtor or the Debtor's attorney regarding the Debtor's motion to reopen his bankruptcy case. On or about June 26, 2018, the Debtor's attorney filed a certificate of no response with regard to the Debtor's motion to reopen Chapter 11 case. On or about June 28, 2018, the court granted the Debtor's motion to reopen his bankruptcy case and granted a discharge as otherwise provided in bankruptcy code section 1141 (d) (5) of the bankruptcy code and further ordered that upon entry on the docket of the Discharge Order, the bankruptcy court clerk was directed to

immediately close the case. Conestoga did not receive notice of and was not aware of any of these actions.

## II. ARGUMENT

In order for a lien such as the Springleaf Mortgage against the Property to be avoided during a bankruptcy case, some action must be taken by the Debtor resulting in a court order that serves to expressly avoid the lien. Here, the lien of the Springleaf Mortgage was not disallowed or avoided through the Debtor's Plan. In fact, the Springleaf Mortgage was not addressed at all in the Plan. The Debtor certainly did not make any payments on account of or in connection with the Springleaf Mortgage loan as part of its Plan. Conestoga, as the holder of the Springleaf Mortgage, had no reason to believe that the lien of that mortgage was adversely affected in any way as a result of the Plan. Even if Conestoga had been aware of the Debtor's motion to reopen his Chapter 11 case (which it was not), no action on behalf of Conestoga would been required because the lien which it held against the Property would not have been legally discharged as a result of any action taken by the Debtor at that time. The activities of the Debtor in seeking to reopen his Chapter 11 case almost 2 years after the case was terminated and then less than three weeks later having an order entered essentially by default granting the motion and obtaining a discharge of certain debts was at least highly unusual and appears to be an ill-advised artifice employed by the Debtor to seek to discharge his debts through this backdoor procedure at a time when no creditor would have expected or been prepared to defend against such actions.  Had the Debtor acted promptly in seeking to extinguish and/or discharge the Springleaf Mortgage Loan, and had the Debtor properly notified creditors such as Conestoga of his intentions, this issue would have been addressed and resolved by the Court in a timely fashion with all proper parties present and able to assert their respective rights and defenses.

If the Debtor is permitted to discharge the lien currently held by Conestoga in connection with the Springleaf Mortgage, Conestoga's constitutional rights to due process would be violated in that Conestoga has never received notice of any motion or other action

which would purportedly extinguish or discharge the Springleaf Mortgage Loan and Conestoga was denied the right to object to any such action which would significantly and adversely affect its rights in property, specifically the significant monies owed in connection with the Springleaf Mortgage Loan.

The current effort by the Debtor to improperly extinguish and/or discharge the Springleaf Mortgage Loan and/or the Springleaf Mortgage is unconstitutional and would lead to an inequitable result. As a matter of equity, the Debtor should not be permitted to obtain a windfall under all the circumstances of this case. If the Debtor is permitted to discharge the Springleaf Mortgage obligation, the Debtor will be unjustly enriched.

Section 524 (a)(2) of the bankruptcy code states: "(a) A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability, whether or not discharge of such debt is waived." The purpose for the statutory injunction "is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts." *In re Armstead,* 1997 WL 860677 at 3 (Bankr. E.D. Pa. Nov. 7, 1997) (quoting H.R. Rep. No. 595, 95th Congress, 1st Sess. 365-66 (1977). The key phrase in section 524(a)(2) is "as a personal liability of the debtor." A secured creditor's demand for payment as a condition of satisfying a valid lien on property is not an act to collect a debt "as a personal liability of the debtor" prohibited by section 524 (a)(2). This is because "valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt." *Estate of Lellock v. Prudential Ins. Co. of America*, 811 F. 2d 186, 189 (3d Cir. 1987). Secured creditors "are not prevented from post-discharge enforcement of a valid lien on property of the debtor … if the lien was not avoided under the Code." 4 Collier on Bankruptcy section 524.02 [2] [d] (Allen and. Resnick, Henry J. Sommer eds. 16th ed. 2012); also see *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991) (noting that "a discharge extinguishes only the personal liability of the debtor… a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy").

Section 524(a)(2) does not prohibit the holder of an unavoided lien from enforcing it in a subsequent in rem action. *In re Burkett*, 295 B.R. 776, 784 (Bankr. W.D. Pa. 2003).

It only prohibits the lienholder from commencing or continuing an action to enforce a discharged debtor's personal liability that arose in connection with the lien. Under Pennsylvania law, an action in mortgage foreclosure may not include an in personam action to enforce a debtor's personal liability. *Reed v. S & T Bank* (*In re Reed*), 274 B.R. 155, 158 (Bankr. W.D. Pa. 2002). When the Debtor's Plan was confirmed it did not avoid, impair or reclassify the Springleaf Mortgage lien and thus as a matter of law the lien survived the bankruptcy discharge.

A motion to reopen a bankruptcy case should not be granted if doing so would be futile because no relief can be afforded the moving party. *In re Fellheimer*, 443 B.R. 355 (Bankr. E.D. Pa. 2010) (quoting *In re Tarkington*, 301 B.R. 792, 798 (10th Cir. BAP 2003)). Similarly, a case "should not be reopened to relieve a party of its own neglect or mistake" *In re Borer*, 73 B.R. 29, 31 (Bankr. N.D. Ohio 1987). In this case, the Debtor had both the opportunity and the obligation to determine whether or not the Springleaf Mortgage had been paid and/or satisfied (which it had not). The assignment of the Springleaf Mortgage to Conestoga was contained in a public record which contained correct contact information for Conestoga. It was the Debtor's own negligence or mistake not to confirm the true status of the Springleaf Mortgage and not to contact Conestoga with regard to any issues relating to the Springleaf Mortgage. Therefore, reopening the Debtor's bankruptcy case would be futile because no relief can be afforded to the Debtor in this case.

Bankruptcy code section 350 (b) provides for the reopening of a bankruptcy case "to administer assets, to accord relief to the debtor, or for cause." Whether to reopen a closed case is committed to the sound discretion of the bankruptcy court. *Donaldson v. Bernstein*, 104 F. 3d 547, 551 (3rd Cir. 1997). The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving party (in this case the Debtor). In re Redcay, 2007 WL 4270378 at 2 (Bankr. E.D. Pa. 2007). In exercising that discretion, a bankruptcy court should consider a variety of factors, including (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of non-bankruptcy courts, such as state courts, to entertain the claims. In re Antonious, 373 B.R. 400, 405-06 (Bankr. E.D. Pa. 2007). No meaningful relief can be obtained by reopening this case. There can be no benefit to the

creditors of the Debtor's estate. The Debtor is attempting to sell real property that is subject to a lien which was neither avoided nor discharged as a result of the prior actions in this bankruptcy case. The Debtor has paid nothing on account of the Springleaf Mortgage loan and no provision for payment was made in the Debtor's Plan. The Debtor is attempting to sell the Property without paying legitimate creditors like Conestoga. This is not the cause a court looks to when contemplating the reopening of a closed bankruptcy case. To do so would encourage debtors to ignore legitimate liens in a bankruptcy plan of reorganization, obtain a discharge, and then seek to reopen a case in hopes of profiting at the expense of creditors. This type of sharp practice should not be permitted or endorsed by the Court. The court should not grant a motion to reopen when no clear benefit will inure to the Debtor's estate or its creditors. *Canoe Mfg Co, Inc.*, 466 B.R. 251, 262 (Bankr. E.D. Pa. 2012) (quoting *In re Nelson*, 100 B.R. 905, 907 (Bankr. N.D. Ohio 1989).

Debtor references the US Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinoza*, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) in support of his motion to reopen asserting that Conestoga's claims were extinguished as a result of the order of discharge. However, the bankruptcy plan at issue in *Espinoza* contained a provision expressly stating that the accrued interest on the debtor's student loans would be discharged (*Espinoza*, 130 S. Ct. at 1374). In this case, the Debtor's Plan makes no reference whatsoever to the dischargeability, avoidance or discharge of the Springleaf Mortgage. Irrespective of the Debtor's treatment of the Springleaf Mortgage under the Plan, the nature of the Springleaf Mortgage was not legitimately challenged, did not change and remains as a lien against the Property. Accordingly, because it would be futile and of no benefit to the bankruptcy estate or creditors, the Debtor's current motion to reopen bankruptcy case should be denied.

If for any reason the Court does elect to reopen the Debtor's bankruptcy case, Conestoga requests that the Court does so for the limited purpose of confirming the existence and validity of the Springleaf Mortgage and the mortgage loan debt currently owed to Conestoga associated with the Springleaf Mortgage, in the amount of $42,102.93 plus any interest accruing thereon after September 28, 2012 at the rate of interest set forth in the original Springfield Mortgage Loan documents.

| | |
|---|---|
| Respectfully submitted, | Date: November 12, 2019 |
| /s/  *Mark C. Clemm* | |
| Mark C. Clemm, Esquire | |