# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| **Fawwaz Beyha** | : | |
| Debtor | : | Case No. 11-18010 (JKF) |

# **MEMORANDUM OPINION**

Before the Court is the Debtor's Motion to Reopen his bankruptcy case. Conestoga Title Insurance Company (Conestoga) filed a Response in opposition to the motion. For the reasons set forth below, the Motion will be granted.[1]

*Background*

Prior to bankruptcy the Debtor amassed a portfolio of investment properties. *See* Sched. A. Among those properties is 1900 South 19th Street in Philadelphia (the 19th Street property). *Id*. The Debtor purchased that property in 1997 with a mortgage loan which would later be assigned to Springleaf Financial. Resp. ¶¶ 23-24

*Delta Loan and*
*Title Report*

In 2006 the Debtor sought financing from Delta Funding. *Id.* ¶ 25. As collateral for a loan, the Debtor pledged the 19th Street property. *Id*. In addition to the mortgage itself, Delta obtained title insurance from Conestoga as to that property.[2] In preparing the title

---

[1] As the instant proceeding concerns the scope of the discharge injunction arising from §§ 524 and 1141 of the Code, it is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (O).

[2] Presumably, this would have been what is known in the industry as a "lender's policy." As a condition to providing refinancing, the lender would have required proof of clear title in order to protect its investment. *See Markocki v. Old Republic Nat. Title Insur. Co.*, 254 F.R.D. 242, 245 (E.D.Pa. 2008) class decertified 2015 WL 3421401 (E.D.Pa. May 27, 2015) (discussing aspects of title insurance associated with refinancing)

1

report on the 19th Street Property, the abstractor failed to identify the Springleaf lien. *Id.* ¶ 26. Whether this was ever made known to Delta is unclear. What is certain, however, is that Delta made the loan. Sometime thereafter it was assigned to Ocwen Loan Servicing. *Id.* ¶ 29.

*Bankruptcy*

In October 2011 the Debtor commenced this case under Chapter 13 of the Bankruptcy Code. Both Ocwen and Springleaf filed secured Proofs of Claim. *See* Claims Docket. While both claims asserted that the 19th Street property secured their loans, neither indicated that their lien was in any place other than first position. This discrepancy must have come to the Debtor's attention because in January 2012 he filed an adversary proceeding against both Ocwen and Springleaf.[3] That action sought to determine the validity and extent of the two liens. It would be dismissed, however, after the Debtor converted his case to a Chapter 11 proceeding.[4] In June 2012 the Debtor Amended his Schedule D to reflect the following lien positions as to the 19th Street Property and in this order of priority:

       1. Springleaf
       2. Ocwen
       3. Lava Funding

*See* Am. Schedule D.

---

[3] Adv. No. 12-0044
[4] In his Chapter 11 Plan, the Debtor would propose to modify the respective liens on the 19th Street property.

*Pertinent Events*
*Outside of Bankruptcy*

This is how things stood until September 2012. At that time, Conestoga learned that it had failed to detect the prior Springleaf mortgage when it insured Delta's loan. In order to provide Delta with first lien position on the 19th Street property, Conestoga paid off the Springleaf loan and became assignee of that obligation. *See* Resp. ¶ 31, Ex. A, Assignment of Mortgage. That, however, just substituted Conestoga for Springleaf as the first lienholder: more was required to place Delta in first lien position. The mechanism by which that was achieved was for Conestoga to unilaterally subordinate its mortgage to Delta's.[5] *Id*. ¶ 32, Ex. B, Subordination of Mortgage. Importantly for present purposes, there is no indication in the record that the Debtor was apprised of these actions.

*The Plan is*
*Confirmed*

In December 2014, the Debtor confirmed his plan. The Plan was consummated, the Debtor obtained a discharge in June 2016, and a Final Decree was entered that same month.

*Motion to Reopen*

The Debtor now moves to reopen his case. A bankruptcy case may be reopened in the court in which such case was closed "to administer assets, to *accord relief to the debtor*, or for other cause." 11 U.S.C.A. § 350(b) (emphasis added). A case will be reopened only where one of the three stated ground are found to exist. *In re Lee,* 356 B.R. 177, 180 (Bankr.N.D.W.Va.2006). The party moving to reopen a case has the

---

[5] It is unclear why Delta was named as the first lienholder as by that time it had already assigned its interest to Ocwen.

3

burden of proof. *In re Cloninger,* 209 B.R. 125, 126 (Bankr.E.D.Ark.1997). The decision to reopen a case is within the Court's sound discretion. *Apex Oil Co. v. Sparks (In re Apex Oil Co.),* 406 F.3d 538, 542 (8th Cir.2005); *In re Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991).

Although the Debtor does not expressly state it, his purpose for reopening the case is to accord relief to him. Conestoga, he contends, is acting in violation of the discharge injunction: despite the discharge of its claim against the Debtor, Conestoga continues to demand payment. That is making it impossible for him to sell one of his real estate properties. *See* Mot. ¶¶ 19-21.

Conestoga responds that it still has a lien on the 19th Street property notwithstanding confirmation of the plan. It explains that it never received any notice of the Plan as required by the Code and so was not afforded the opportunity to object thereto. On that basis, it maintains that the terms of the Plan and resulting discharge have no legal effect upon it. Resp. ¶¶ 7, 9, 10-12. If that is the case, then there is no point in reopening the bankruptcy.

*Analysis*

Conestoga would be correct that reopening the case would be futile if either of two circumstances existed: if its lien was not modified by the Debtor's confirmed plan or, assuming it was, Conestoga did not receive notice of the proposed plan and its treatment of Conestoga's claim.

*Effect of Plan on*
*Conestoga Lien*

The first condition does not exist because the plan expressly proposed to modify the secured interest of Conestoga. The confirmed plan provided that the Debtor would

4

retain the 19th Street property. As to treatment of the liens which encumbered it, the plan provided as follows:

> The treatment and consideration to be received by Class 3 claims in connection with their Secured Claims( i.e., … Ocwen……) shall be in monthly installments consistent with the below mentioned chart during which these creditors will *retain their liens, except the claims of Lava and Springleaf*.
> …
>     Mortgage        balance        modified interest rate
> …
>     f)    Ocwen        115,232.18        5.0

Eighth Am. Plan, p. 9 [emphasis added]. So as to the 19th Street property, the plan proposed that only the Ocwen lien would be paid and at a modified rate of interest. The liens of Springleaf (now Conestoga) and Lava would be extinguished and no payment would be received. None of the three lienholders objected to this treatment.

What resulted from confirmation as far as the junior lienholders was concerned was the divesture of their respective secured interests in the 19th Street property. Section 1141 of the Code provides, in pertinent part:

> Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c). *See In re Omega Optical, Inc.*, 476 B.R. 157, 164 (Bankr. E.D. Pa. 2012) ("This long-standing provision provides that confirmation of a chapter 11 plan can divest creditors of their security interests, *i.e.,* liens, in certain circumstances.")  To determine if full lien divestiture resulted from plan confirmation, a four-part test if used: (1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt

5

with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien. *Id.*

The Court finds three of the four elements (##1, 2, and 4) to be definitively established. First, the Debtor's chapter 11 plan has been confirmed. Second, Conestoga's collateral—the 19th Street property—was dealt with by the plan as revesting in the Debtor, subject only to the Ocwen lien and obligation. Fourth, the plan specifically provided that Springleaf (now Conestoga) would hold no lien after confirmation, and would not be paid.

*Conestoga's Claim*
*of Lack of Notice*

That leaves the third element: whether Conestoga participated in this bankruptcy case. Conestoga maintains that it cannot have because it simply was not notified of the Debtor's plan and disclosure statement. The Supreme Court identified the due process requirements for notice in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.

These requirements apply to all proceedings involving a disposition of property, including those in bankruptcy. *See, e.g., City of New York v. New York, New Haven, & Hartford Railroad Co.,* 344 U.S. 293, 295-96, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

*Chapter 11 Confirmation*
*and Notice Requirements*

Those bankruptcy rules which deal with confirmation of a Chapter 11 plan comport with fundamental notions of fairness and due process. Rule 3017 provides that after a disclosure statement is filed pursuant to § 1125(b), the "court shall hold a hearing *on at least 28 days' notice to … creditors* … and other parties in interest *as provided in Rule 2002*." B.R. 3017(a) [emphasis added]. Once approved, the disclosure statement, plan, ballot, notice of voting deadline, and notice of the deadline for objecting to confirmation and of the hearing on confirmation are to be mailed to creditor and parties in interest "in accordance with Rule 2002(b)." B.R. 3017(d)

Again, Rule 2002 requires 28 days' notice to parties in interest for filing objections to a disclosure statement, to confirmation of a plan, and of the hearing on confirmation. B.R. 2002(b). The dockets reflect that notice of the adequacy of the disclosure statement, and the hearing on confirmation (with related deadlines) were served in accordance with this rule. On August 11, 2014, the Debtor filed the Motion to Approve Disclosure Statement (#349). It was served on the parties on the Clerk's Service List as required by the Local Rule 3017-1(c). On September 3, 2014, the Court heard the Motion and it was approved. (#359). On September 18, 2014 an Order Approving the Disclosure Statement and setting a hearing on confirmation was entered (#358). It set the last day to object to confirmation as October 22, 2014. That Order was served by the Bankruptcy Noticing Center (BNC) the next day on all parties listed on the Service List (#362).

A review of the Service List confirms Conestoga's contention that it did *not* received notice of these hearings. The Certificate of Notice of the Order approving the

7

Disclosure Statement issued by the BNC shows that Springleaf, and not Conestoga, was served (#362). Similarly with the Order confirming the Plan: the Certificate likewise listed Springleaf and not Conestoga among the recipients. (#411).

This begs the question, however, of why Conestoga, an interested party, was not receiving notices while Springleaf, long since gone from the case, remained on the Clerks' Service List. Springleaf had assigned its interest in the 19th Street property 2 years before the Court approved the disclosure statement. Yet neither Springleaf nor Conestoga took any action to apprise the Debtor or the Clerk's Office that Conestoga held the lien formerly held by Springleaf as to the 19th Street property. The Debtor's Schedules do not reflect that Conestoga was an interested party. Conestoga never filed a Proof of Claim. Most importantly, Conestoga did not file a request for notices in the case as provided by L.B.R. 2002-1 until November 2019, almost 5 years after confirmation. So if Conestoga did not receive notice of the plan and disclosure statements, it was because it never informed the Debtor or the Bankruptcy Court Clerk's Office that it was a party in interest until it was too late. The fault for that lies squarely with Conestoga.

*Summary*

The upshot of all of this is that Conestoga's lien was divested by the Debtor's Plan. For that reason, the Court finds that the Debtor has stated grounds for reopening the case based on a colorable violation of the discharge injunction.

    An appropriate order follows.

                                      BY THE COURT

                                      *[signature]*

Dated: March 4, 2020                    Jean K. FitzSimon
                                      United States Bankruptcy Judge

Copies to:

Ronald G. McNeil, Esquire
McNeil Legal Services
1333 Race Street
Philadelphia, PA 19107-1585

Mark C. Clemm, Esquire
Clemm and Associates, LLC
488 Norristown Road
Suite 140
Blue Bell, PA 19422